UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SARAH PERKINS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GLOBAL CUSTOM COMMERCE, INC., and HOME DEPOT U.S.A., INC.,<br><br>        Defendants. | Case No.: 2:25-cv-01750-RAJ<br><br>**REPLY IN SUPPORT OF**<br>**HOME DEPOT'S MOTION TO DISMISS**<br><br>NOTE ON MOTION CALENDAR:<br>November 7, 2025 |

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................6

ARGUMENT ....................................................................................................................6

I.    PLAINTIFF'S CEMA CLAIM IS PREEMPTED BY FEDERAL LAW. ........................6

    A.    The CAN-SPAM Act Preempts CEMA. ..............................................................7

    B.    The Limited Exception for Traditional Tort Theories Does Not Apply. ................8

II.   CEMA VIOLATES THE DORMANT COMMERCE CLAUSE. ................................14

    A.    CEMA Impermissibly Directly Regulates Interstate Commerce. ........................14

    B.    CEMA Excessively Burdens Interstate Commerce. ............................................16

III.  PLAINTIFF'S CLAIMS BASED ON ALLEGED CONDUCT BETWEEN 2021
    AND 2023 ARE BARRED BY A PRIOR CLASS SETTLEMENT. ..............................18

CONCLUSION...............................................................................................................20

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS
– 2

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. City of Long Beach*,
    951 F.2d 977 (9th Cir. 1991) ...................................................................... 16, 17

*Anderson v. Nextel Retail Stores, LLC*,
    No. CV 07-4480-SVW, 2010 WL 8591002 (C.D. Cal. Apr. 12, 2010) ................................. 18

*Andrews v. Conversion Squared Corp.*,
    No. 820CV00247JLSJDE, 2020 WL 3978063 (C.D. Cal. May 8, 2020) ......................... 9, 11

*Asis Internet Servs. v. Subscriberbase Inc.*,
    No. 09-3503 SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ....................................... 10, 12

*Asis Internet Servs. v. Member Source Media, LLC*,
    No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) .................................... 13

*Balsam v. Trancos, Inc.*,
    138 Cal. Rptr. 3d 108 (Cal. Ct. App. 2012) ..................................................................... 10

*Brummett v. Washington's Lottery*,
    288 P.3d 48 (Wash. Ct. App. 2012) ................................................................................ 11

*Curtis v. Inslee*,
    154 F.4th 678 (9th Cir. 2025) ......................................................................................... 13

*Daniels Sharpsmart, Inc. v. Smith*,
    889 F.3d 608 (9th Cir. 2018) ............................................................................. 14, 15, 16

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982) ................................................................................................. 14, 15

*Flynt v. Bonta*,
    131 F.4th 918 (9th Cir. 2025) .............................................................................. 14, 16, 17

*Gordon v. Virtumundo Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ................................................................................*passim*

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) .................................................................................... 18, 19

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) .................................................................................18

*Isomedia, Inc. v. Spectrum Direct, Inc.*
    No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009) .................11

*Kleffman v. Vonage Holdings Corp.*,
    No. CV 07-2406GAFJWJX, 2007 WL 1518650 (C.D. Cal. May 23, 2007),
    *aff'd*, 387 Fed. App'x 696 (9th Cir. 2010)..............................................................9

*Liu v. Home Depot U.S.A., Inc.*,
    No. 23-cv-1217 (W.D. Wash.)................................................................... 17, 18, 19

*Martin v. CCH, Inc.*,
    784 F. Supp. 2d 1000 (N.D. Ill. 2011)...................................................................9

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) .............................................................................17

*Nat'l Collegiate Athletic Ass'n v. Miller*,
    10 F.3d 633 (9th Cir. 1993) ................................................................................17

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ...................................................................................... 14, 15

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
    469 F.3d 348 (4th Cir. 2006) ................................................... 8, 12, 16, 17

*Sam Francis Foundation v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) (*en banc*)........................................ 14, 15, 16, 17

*Silverstein v. Keynetics Inc.*,
    192 F. Supp. 3d 1045 (N.D. Cal. 2016)...........................................................8, 9

*Sizer v. New England Life Ins. Co.*,
    871 F. Supp. 2d 1071 (D. Or. 2012).....................................................................13

*State v. Heckel*,
    24 P.3d 404 (Wash. 2001) (*en banc*)............................................................ 17, 18

*In re TikTok, Inc., Consumer Priv. Litig.*,
    713 F. Supp. 3d 470 (N.D. Ill. 2024)....................................................................18

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    No. C-07-6140 EMC, 2014 WL 12646027 (N.D. Cal. Feb. 18, 2014)..................19

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS
– 4

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

**Statutes**

15 U.S.C. § 7701(a)(11) ............................................................................................16

15 U.S.C. § 7704(a)(2) ...............................................................................................7

15 U.S.C. § 7707(b)(1) ...............................................................................................7

CAN-SPAM Act, § 15 U.S.C. 7701-7713 ...........................................................*passim*

Washington Commercial Electronic Mail Act, RCW 19.190 ................................*passim*

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 5

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

**CERTIFICATE OF CONFERRAL**

On October 28, 2025, counsel for the parties met and conferred via telephone about Home Depot's Motion to Dismiss (Dkt. No. 19), asserting that Plaintiff's Complaint fails to state a claim for four independent reasons. Counsel for the parties discussed these issues in detail, and Plaintiff's counsel confirmed that they do not intend to dismiss the case, for the reasons set forth in Plaintiff's Opposition to Home Depot's Motion to Dismiss (Dkt. No. 21). The parties were unable to resolve their dispute.

**INTRODUCTION**

In its Motion to Dismiss ("Motion" or "Mot."), Home Depot catalogued all the reasons why Plaintiff's claims should be dismissed. First, Plaintiff's CEMA claim cannot stand in the face of the Supremacy and Commerce Clauses of the Constitution. Second, Plaintiff's CEMA claim is barred in part by a prior class settlement that resolved identical claims. And third, Plaintiff's CPA claim cannot stand because it is derivative of Plaintiff's CEMA claim.[1] In Plaintiff's Opposition ("Opposition" or "Opp."), Plaintiff offers hollow arguments that defy authority and fail to meaningfully respond to the substance of Home Depot's Motion. Accordingly, Home Depot respectfully requests that this Court grant its motion to dismiss Plaintiff's claims.

**ARGUMENT**

**I.    PLAINTIFF'S CEMA CLAIM IS PREEMPTED BY FEDERAL LAW.**

Plaintiff misreads controlling Ninth Circuit authority and improperly attempts to expand the exception to CAN-SPAM preemption for state laws that proscribe "falsity or deception" beyond its "limited, narrow" scope. *Gordon v. Virtumundo Inc.*, 575 F.3d 1040, 1061 (9th Cir.

---

[1] Plaintiff admits her CPA claim is derivative of her CEMA claim. Opp. at 27 n.9. Because her CEMA claim is due to be dismissed, so is her CPA claim.

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

2009). By Plaintiff's theory, CEMA operates as a strict liability statute, enabling consumers to pursue claims for any allegedly misleading subject line, regardless of whether the consumer read, acted upon, or was otherwise affected by the alleged misrepresentation. *See* Opp. at 15 (arguing that CEMA "provide[s] a cause of action based solely on the receipt of commercial emails containing materially false or deceptive information"). Plaintiff alleges only that she "received" certain promotional emails with misleading subject lines, but she does not allege she opened or read any of them, relied on any statement, or was otherwise injured as a result. Compl. ¶¶ 23, 50. She likewise fails to allege any purchase tied to any purportedly deceptive email. Indeed, her only purchases identified in the Complaint occurred in 2022, long before she claims she received any emails from Blinds.com. Compl. ¶ 48. As a result, Plaintiff's CEMA claim does not satisfy any exception to CAN-SPAM preemption and should be dismissed as a matter of law.

### A. The CAN-SPAM Act Preempts CEMA.

Plaintiff acknowledges that "CAN-SPAM regulates commercial email at the federal level" to "create 'one national standard' regarding the specified content and labeling of commercial email because 'the patchwork of state laws had proven ineffective.'" Opp. at 10–11 (citing *Virtumundo*, 575 F.3d at 1062–63). To achieve this goal, Congress included nationwide prohibitions on emails with subject lines that are "likely to mislead a recipient" about "a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7704(a)(2).

Congress expressly prohibited states from imposing their own regulations by broadly preempting "any statute, regulation, or rule of a State" that "expressly regulates the use of electronic mail to send commercial messages" subject to certain limited exceptions. *Id.* § 7707(b)(1); *see also Virtumundo*, 575 F.3d at 1063. Despite CAN-SPAM's broad preemptive

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Telephone: 206-319-7052

scope, Plaintiff argues that Congress did not intend to preempt statutes like CEMA. *See* Opp. at 15. The Ninth Circuit, however, has held that state laws that regulate "mere error" or "insignificant inaccuracies" in commercial emails would undermine the comprehensive, nationwide "code of conduct" established by the CAN-SPAM Act. *Virtumundo*, 575 F.3d at 1048, 1061. If claims like Plaintiff's—based on harmless misstatements—were allowed to survive preemption, "[t]he strict liability standard imposed by a state such as [Washington] would become a de facto national standard, with all the burdens that imposed, even though the CAN-SPAM Act indicates that Congress believed a less demanding standard would best balance the competing interests at stake." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006).

### B. The Limited Exception for Traditional Tort Theories Does Not Apply.

Plaintiff contends that her claims under CEMA are exempt from preemption because they arise under a state law prohibiting "falsity or deception in any portion of a commercial electronic mail message," thereby falling within the exception to CAN-SPAM preemption. Opp. at 10–12. However, Plaintiff's assertion that CAN-SPAM preserves any state statute banning "false or misleading" emails, irrespective of whether such claims align with common-law fraud elements, is directly contradicted by circuit precedent and is inconsistent with the policy objectives underlying the CAN-SPAM Act.

### 1. The Ninth Circuit has limited the CAN-SPAM preemption exception to traditional tort theories sounding in fraud.

Plaintiff concedes that CAN-SPAM's preemption clause exempts only state laws prohibiting "falsity or deception in any portion of a commercial electronic mail message." Opp. at 10 (quoting 15 U.S.C. § 7707(b)(1)). Yet Plaintiff contends that Home Depot "misreads" the Ninth Circuit's holding in *Virtumundo* that the exception is limited to claims satisfying the elements of

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS
– 8

common-law fraud. Opp. at 12. She further claims that "Home Depot's argument has been rejected by every district court and state court in this Circuit that has considered the issue since [*Virtumundo*] was decided." *Id.* at 12. That is incorrect. As a threshold matter, the cases Plaintiff cites do not address CEMA claims at all; rather, they involve California's anti-spam statute. *Id.* at 12–13. In any event, those authorities squarely conflict with *Virtumundo*, which remains "the governing Ninth Circuit precedent on the issue of CAN-SPAM Act preemption." *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1051 (N.D. Cal. 2016).

In *Virtumundo*, the Ninth Circuit explained that Congress intended to carve out a "limited, narrow exception" from CAN-SPAM preemption, strictly preserving claims based on "traditional tort theories" such as fraud or deceit. 575 F.3d at 1061–63; *see also Kleffman v. Vonage Holdings Corp.*, No. CV 07-2406GAFJWJX, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007), *aff'd*, 387 Fed. App'x 696 (9th Cir. 2010) (explaining that Congress deliberately limited states to enforcing "*traditional* fraud prohibitions to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such well-established prohibitions").

To avoid preemption, then, a plaintiff must demonstrate actual deception consistent with traditional tort principles, including reliance on and injury resulting from the alleged misrepresentation. *See Virtumundo*, 575 F.3d at 1063 (holding that the plaintiff's claims were preempted because the plaintiff "was not in any way misled or deceived"); *see also Kleffman*, 2007 WL 1518650, at *3 (holding that the plaintiff's claims were "clearly preempted" because the complaint "does not allege a traditional tort theory at all, or even that he was at any point mislead by any of the eleven Vonage emails"); *Silverstein*, 192 F. Supp. 3d at 1051 (applying *Virtumundo's* framework and holding that claims were preempted because they did not involve the type of

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Telephone: 206-319-7052

"falsity or deception" required to avoid preemption); *Andrews v. Conversion Squared Corp.*, No. 820CV00247JLSJDE, 2020 WL 3978063, at *2 (C.D. Cal. May 8, 2020) (finding claim to be preempted because "[p]laintiffs do not really allege deception"); *Martin v. CCH, Inc*., 784 F. Supp. 2d 1000, 1006 (N.D. Ill. 2011) (citing *Virtumundo* and finding the plaintiff's Illinois Electronic Mail Act claims to be preempted because they "do not rise to the level of fraud").

In asserting that reliance and injury are not required, Plaintiff here relies on out-of-state and district-level authorities that are wholly inapposite, many of which address California's anti-spam statute, which Plaintiff's own cited cases acknowledge is "quite distinct from the Washington statute in *Virtumundo*." *Asis Internet Servs. v. Subscriberbase Inc*., No. 09-3503 SC, 2010 WL 1267763, at *11-*13 (N.D. Cal. Apr. 1, 2010) (explaining that California's statute includes a scienter requirement and therefore "prohibits only behavior that Congress authorized California to prohibit"); *see also* Opp. at 12–13 (citing cases arising under the California statute).

Plaintiff also cites cases that are distinguishable on the facts, as they involved the very allegations of intentional deception required to fit within the narrow CAN-SPAM exception. *See, e.g.*, *Balsam v. Trancos, Inc*., 138 Cal. Rptr. 3d 108, 122-23 (Cal. Ct. App. 2012) (holding that plaintiff's claims were not preempted by the CAN-SPAM Act because the defendant's "deliberate use of randomly chosen, untraceable domain names . . . for the stated purpose of concealing its role in sending them" involved "deception as to a material matter—the sender's identity—as well as an element of wrongful conduct"). Here, by contrast, Plaintiff asserts only that Defendants "know" their promotions are frequent and "know, or have reason to know," recipients' residencies. Compl. ¶¶ 37–39. But even taking Plaintiff's allegations as true, there is nothing inherently fraudulent about offering frequent discounts or email promotions, particularly where Plaintiff does

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 10

not allege that she was denied any advertised sale price. Instead, she alleges solely that Home Depot's sales ultimately lasted longer than initially indicated. *See id.* ¶¶ 34–36, 38. Absent additional facts showing that Home Depot intended to deceive consumers, Plaintiff fails to establish deceitful knowledge or scienter on Home Depot's part.

> 2.  *Plaintiff's Complaint does not allege traditional tort claims and is therefore preempted.*

For Plaintiff's claims to survive CAN-SPAM preemption, Plaintiff was required to plead claims arising from "traditionally tortious or wrongful conduct," including a material misrepresentation, as well as proof of reliance, injury, and deceitful intent—all of which are absent from Plaintiff's Complaint. Compl. ¶¶ 23, 48, 50, 71, 86.

Plaintiff concedes that the misrepresentation must have been "*materially* false or misleading" to avoid CAN-SPAM preemption. *See* Opp. at 12 (acknowledging that the Ninth Circuit "read into the savings clause a materiality requirement, explaining that 'a materiality component comported with the policy pursued by the federal legislation as a whole'" (quoting *Virtumundo*, 575 F.3d at 1061)); *Id.* at 13 n. 4 (acknowledging that many of Plaintiff's cited cases imposed materiality requirement). Yet Plaintiff contends that to prove materiality, she need only show that the misrepresentation involved information that is "important to consumers" generally, rather than to the individual Plaintiff. *See id.* at 18. In other words, Plaintiff argues she can establish materiality without alleging that she actually read any of the emails, much less that she was deceived by any of them. But materiality requires more than general importance to consumers; it must involve deceptive statements that influenced a purchase decision. *See Andrews*, 2020 WL 3978063, at *2 (explaining that to escape CAN-SPAM preemption, the misrepresentation must be "material in the 'traditionally tortious or wrongful' sense"); *Isomedia, Inc. v. Spectrum Direct,*

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 11

*Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009) (reasoning that while plaintiff "has alleged certain elements of fraud in some of its separate assertions of how the subject emails may violate the CAN-SPAM or CEMA statutes" it does not "allege that this information is material, or that anyone took action in reliance thereon"); *see also Brummett v. Washington's Lottery*, 288 P.3d 48, 54 (Wash. Ct. App. 2012) (holding that statements that raffle tickets were "selling fast" were not material where plaintiff failed to establish that the advertisements "induce[d] the public to purchase tickets").

Here, Plaintiff fails to allege that the supposedly misleading email subject lines were material to any purchasing decision.[2] And while she speculates about a "false sense of urgency" and "value," referencing irrelevant case law concerning the hypothetical impact of price on consumer purchasing behavior generally, Plaintiff does not identify a single purchase driven by a challenged subject line. Opp. at 17 (citing Compl. ¶¶ 18–35); *id*. at 18–19. Nor could she, given that each of her alleged purchases were made *prior to* receiving any of the purportedly misleading emails. Compl. ¶ 48.

Beyond materiality, Plaintiff acknowledges that she must also prove "traditionally *tortious or wrongful* conduct" to escape preemption. Opp. at 12 (quoting *Virtumundo*, 575 F.3d at 1062) (emphasis added). In other words, Plaintiff must show that Home Depot knowingly made false statements with the intent to deceive consumers. *See, e.g.*, *Virtumundo*, 575 F.3d at 1064 (noting that plaintiff failed to "present evidence that Virtumundo's practice is *aimed* at misleading recipients as to the identity of the sender") (emphasis added); *Omega*, 469 F.3d at 353–54

---

[2] Plaintiff's failure to allege materiality and reliance also highlights her inability to demonstrate that she suffered any concrete, non-statutory injury directly caused by the subject lines themselves. *See* Compl. ¶¶ 78–89 (seeking statutory damages of $500 per email and treble damages based solely on a *per se* CPA theory).

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 12

1    (explaining that "'deception' requires more than bare error," and common law fraud or deceit

2    require that the sender "knew" the statements were false).

3        Yet, Plaintiff maintains that she need not plead scienter. This assertion contradicts the very

4    cases she cites, many of which identify deceptive intent as a prerequisite for claims to survive

5    preemption. *See, e.g.*, *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC,

6    2010 WL 1610066, at *5 (N.D. Cal. Apr. 20, 2010) (evaluating "*intentional* deception" when

7    deciding whether claims fall under preemption exception) (emphasis added); *Subscriberbase*,

8    2010 WL 1267763, at *11–13 (suggesting preemption turns on whether the advertiser made a

9    "*material*, *intentional* misrepresentation") (emphasis added). Recognizing that she has staked out

10   an untenable position, Plaintiff halfheartedly argues in a footnote that "scienter is alleged." *See*

11   Opp. at 17 n.5 (citing Compl. ¶ 38). But her generalized factual allegations that Defendants "know"

12   their promotions are frequent and "know, or have reason to know," recipients' residencies fall far

13   short, particularly where the obvious, non-fraudulent business reasons for extending promotions

14   defeat any inference of wrongful intent at the pleading stage.[3] Compl. ¶¶ 37–39; *see also Curtis v.*

15   *Inslee*, 154 F.4th 678, 695 (9th Cir. 2025) ("On review of a motion to dismiss, we need draw only

16   those *reasonable* inferences in the [plaintiff's] favor, not all potential inferences."); *Sizer v. New*

17   *England Life Ins. Co.*, 871 F. Supp. 2d 1071, 1080 (D. Or. 2012) ("Courts will not presume fraud"

18   in scenarios where the conduct is "equally susceptible to two explanations, one which is consistent

19   with fraudulent intent and the other with good faith and fair dealing.") (citation modified).

---

[3] In fact, Plaintiff's allegations of knowledge merely recite the statutory elements of CEMA and do not come close alleging the "scienter" required to support a claim grounded in traditional tort theories such as fraud or deceit.

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 13

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

At bottom, Plaintiff's arguments in her Opposition cannot remedy any of the shortcomings in her Complaint, and she does not even attempt to disguise her claims as common law fraud to evade preemption. As a result, her claims are preempted by federal law.

## II. CEMA VIOLATES THE DORMANT COMMERCE CLAUSE.

Plaintiff employs a "two-tier, multi-factor test" to defend CEMA against challenges Home Depot did not raise. Opp. at 20 n.6. But Plaintiff's efforts to overcomplicate the Dormant Commerce Clause analysis do not undermine the straightforward points asserted in Home Depot's Motion: (1) CEMA violates the Dormant Commerce Clause to the extent it seeks to regulate communications that have no connection to Washington; and (2) CEMA violates the Dormant Commerce Clause because it imposes a burden on interstate commerce that is "'clearly excessive' in relation to the law's putative local benefits." *Flynt v. Bonta*, 131 F.4th 918, 929–31 (9th Cir. 2025) (cleaned up); *see* Mot. at 14–19.

### A. CEMA Impermissibly Directly Regulates Interstate Commerce.

A state statute violates the Dormant Commerce Clause if it "directly regulate[s] out-of-state transactions by those with no connection to the State." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023) (emphases omitted); *see Edgar v. MITE Corp.*, 457 U.S. 624, 641–43 (1982) (plurality op.). For example, in *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (*en banc*), the Ninth Circuit considered a California law requiring royalties to be paid to an artist for fine art sales "whenever 'the seller resides in California.'" *Id.* at 1323 (quoting Cal. Civ. Code § 986(a)). The court observed that the statute would regulate an out-of-state art sale even where "the sculpture, the artist, and the buyer never traveled to, or had any connection with, California" just because the seller was a California resident. *Id.* Based on this

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Telephone: 206-319-7052

illustration, the court "easily conclude[d]" that the statute "violate[d] the dormant Commerce Clause." *Id.*; *see also Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 612–13, 616 (9th Cir. 2018) (holding that a California law regulating the out-of-state disposal of medical waste violated the Dormant Commerce Clause because "there [was] nothing to indicate that the transactions had any effect whatsoever in California").

Like the state statutes struck down in *Edgar*, *Christies*, and *Daniels Sharpsmart*, CEMA regulates communications that have no connection to Washington. The statute prohibits the transmission "of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender *knows, or has reason to know, is held by a Washington resident*." RCW 19.190.020(1) (emphasis added). The statute also imposes a constructive-knowledge requirement: "[f]or purposes of this section, a person knows that the intended recipient of a commercial electronic mail message is a Washington resident *if that information is available*, upon request, *from the registrant of the internet domain name* contained in the recipient's electronic mail address." RCW 19.190.020(2) (emphasis added).

Putting these subsections together, CEMA regulates wholly non-Washingtonian conduct in two ways. First, CEMA applies to communications sent from outside Washington to any person who happened to be a Washington resident when they registered their email address, *regardless* of where that person now resides or is located when they receive the email. Second, the constructive-knowledge requirement effectively calls for *any* interstate email-sender to determine the residency of *all* potential email recipients to ensure compliance with CEMA, irrespective of where everyone is actually located. Perkins contends Home Depot engages in "hypotheticals," Opp. at 22. Not so. Just like the Ninth Circuit's illustration of the unconstitutional law in *Christies*,

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 15

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

Home Depot merely demonstrates CEMA's facially expansive reach. *See* 784 F.3d at 1323. In short, emails that have no "effect whatsoever" in Washington are regulated by CEMA. *Daniels Sharpsmart*, 889 F.3d at 616. Thus, CEMA violates the Dormant Commerce Clause. *See id.*; *Christies*, 784 F.3d at 1323.

For her part, Plaintiff has no response to the merits of Home Depot's Dormant Commerce Clause argument. Rather, she asserts that Home Depot is just "incorrect" and that the cases upon which Home Depot relies are "now-discredited." Opp. at 23 & n.8. Plaintiff ignores, however, that the Supreme Court and the Ninth Circuit have reaffirmed the cases that demonstrate CEMA's unconstitutionality. *See Nat'l Pork Producers Council*, 598 U.S. at 376 n.1 (reaffirming *Edgar*); *Flynt*, 131 F.4th at 930–31 (declining to reconsider *Christies* and *Daniels Sharpsmart*). Accordingly, Plaintiff's argument fails; CEMA violates the Dormant Commerce Clause.

**B. CEMA Excessively Burdens Interstate Commerce.**

CEMA also violates the Dormant Commerce Clause because it imposes a burden on interstate commerce that is "'clearly excessive' in relation to the law's putative local benefits." *Flynt*, 131 F.4th at 931. Under this test, a state law must be struck down "where the asserted benefits of the statute are in fact illusory" because the statute is "unreasonable." *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991).

Here, Plaintiff contends CEMA benefits Washingtonians by protecting them from a "growing volume of commercial e-mails." Opp. at 25 (quotation omitted). But as Home Depot has explained here and in its Motion, *see* Mot. at 10–14, the CAN-SPAM Act already regulates commercial emails. That is why Plaintiff's claims are preempted. Moreover, Home Depot has described how CEMA regulates emails that are sent and received wholly outside Washington.

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Telephone: 206-319-7052

Accordingly, CEMA's "local benefits" are illusory: the statute regulates emails that are (1) already regulated and (2) have no effect on Washingtonians whatsoever.

Meanwhile, CEMA's burden on interstate commerce is immense. As explained above and in Home Depot's Motion, *see* Mot. at 14–19, CEMA imposes massive burdens on interstate commerce by forcing compliance on every interstate email, regardless of the email's nexus (or lack thereof) with Washington. *See, e.g.*, 15 U.S.C. § 7701(a)(11) (recognizing "it can be *extremely difficult* for law-abiding businesses to know with which of these disparate [state] statutes they are required to comply" (emphasis added)); *Omega*, 469 F.3d at 355–56 (noting "it can be difficult or impossible to identify where recipients live and hence to determine the state laws that apply"). Thus, the strictest state compliance standard would become the "de facto" standard. *Id.* at 356. But allowing Washington to dictate national rules is exactly what "the Commerce Clause protects against." *Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993).

In opposition, Plaintiff tries two arguments to downplay CEMA's burden on interstate commerce. Both fail. First, Plaintiff argues that a state law does not violate the Dormant Commerce Clause simply by raising the cost of doing business. Opp. at 26. True, a state regulation that raises the cost of doing business *in that state* may be permissible. *See, e.g.*, *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1145 (9th Cir. 2012) (considering California laws that prohibited opticians from selling or advertising eyewear). But a state regulation that raises the cost of doing business *wholly outside that state* excessively burdens interstate commerce. *See, e.g.*, *Christies*, 784 F.3d at 1323. CEMA is the latter. Second, Plaintiff relies on a Supreme Court of Washington case and argues that Home Depot's interpretation of CEMA is too expansive. Opp. at 26–27 (citing *State v. Heckel*, 24 P.3d 404, 412 (Wash. 2001) (*en banc*)). But *Heckel* expressly

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

declined to consider the full reach of CEMA, lest it "create[] a jurisdictional question *not at issue in this case*." *Heckel*, at 412 (emphasis added).

In sum, weighing CEMA's excessive burden on interstate commerce against its illusory local benefits, CEMA violates the Dormant Commerce Clause. *See Flynt*, 131 F.4th at 931; *Alaska Airlines*, 951 F.2d at 983. Accordingly, Plaintiff's CEMA claims are due to be dismissed.

## III. PLAINTIFF'S CLAIMS BASED ON ALLEGED CONDUCT BETWEEN 2021 AND 2023 ARE BARRED BY A PRIOR CLASS SETTLEMENT.

Plaintiff's claims and the allegations in *Liu v. Home Depot U.S.A., Inc.*, No. 23-cv-1217 (W.D. Wash.), both arise out of alleged perpetual sales on the Internet for Home Depot blinds. Under well-established law, the *Liu* settlement agreement bars Plaintiff's claims that predate *Liu*. Plaintiff's arguments to the contrary cannot save her claims.

Specifically, Plaintiff insists that her claims do not share a factual predicate with the *Liu* claims because Plaintiff complains about emails while the *Liu* allegations concerned websites. Opp. at 27–30; *see Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (subsequent claims are barred by a settlement agreement if they share a factual predicate). This is a distinction without a difference. After all, "the released claims need not be *exactly* factually and legally identical to the allegations in the complaint; rather, they need only share a common factual predicate." *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW (FFMx), 2010 WL 8591002, at *6 (C.D. Cal. Apr. 12, 2010) (emphasis added). Here, Plaintiff and the *Liu* plaintiff both brought claims premised on Home Depot's Blinds.com advertisements of discounted products that Home Depot allegedly never actually discounted. Courts routinely find that subsequent claims are barred when their factual predicates overlap so extensively. *See, e.g.*, *In re TikTok, Inc., Consumer Priv.*

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

*Litig.*, 713 F. Supp. 3d 470, 494–95 (N.D. Ill. 2024) (applying Ninth Circuit law); *Anderson*, 2010 WL 8591002, at *6. This Court should reach the same conclusion.

Plaintiff further contends "the alleged harms and damages . . . meaningfully differ" between her case and the *Liu* case. Opp. at 29 (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748–49 (9th Cir. 2006). But Plaintiff and the *Liu* plaintiff both alleged the same *factual* harm: getting Blinds.com advertisements for discounted products that were allegedly never discounted. *See* Compl. ¶¶ 2, 7; Compl., *Liu*, No. 23-cv-1217, ECF 1 at ¶ 5. The plaintiffs' assertions of different *legal theories* of damages (*i.e.*, statutory damages versus actual damages) are irrelevant. *See, e.g.*, *Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (holding that settlement released the state law fraudulent billing claims before it and federal RICO claims arising from the same billing practices).

Finally, Plaintiff protests that it would be "unfair" for her claims to be barred by the *Liu* settlement because the *Liu* plaintiff "did not allege a CEMA claim." Opp. at 29–30. But this argument is foreclosed by well-established law. *See Hesse*, 598 F.3d at 590 (holding that a settlement agreement can bar subsequent *related* claims even if those claims were not presented or even presentable).[4] And in any event, if Plaintiff seeks to challenge the adequacy of the *Liu* plaintiff's representation of Plaintiff's interests, she has "adduced no evidence" to support her position. *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014). Accordingly, her argument should be rejected.

---

[4] Moreover, the *Liu* settlement agreement released all claims that *could* have been brought in that action. *See* Mot. Ex. A at 12. Plaintiff offers no evidence that her claims could not have been brought in the *Liu* action.

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 19

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA  98101
Telephone:  206-319-7052

## CONCLUSION

For the foregoing reasons, Home Depot respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

DATED this 7th day of November, 2025.

*I certify that this memorandum contains 4,191 words,*
*in compliance with the Local Civil Rules.*

BUCHALTER
A Professional Corporation

*s/ Alexandra M. Shulman*
Alexandra M. Shulman, WSBA No. 48888
Email: ashulman@buchalter.com
Jeffrey R. Kaatz, WSBA No. 49709
Email: jkaatz@buchalter.com
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Phone: 206-319-7052

*Attorneys for Defendants*

HOME DEPOT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 20

BUCHALTER
A Professional Corporation
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101
Telephone: 206-319-7052

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing HOME DEPOT's REPLY IN SUPPORT OF MOTION TO DISMISS by the method(s) indicated on the date set forth below on the following parties:

Cody Hoesly, WSBA No. 41190
Email: choesly@bargsinger.com
BARG SINGER HOESLY PC
121 SW Morrison Street, Suite 600
Portland, OR 97204
Telephone: 503-241-3311

Alexander E. Wolf
Email: awolf@milberg.com
MELBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
280 South Beverly Drive, PH
Beverly Hills, CA 90212
Telephone: 872-365-7060

William J. Edelman
Email: wedelman@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 771-474-1121

*Attorneys for Plaintiff*

by ☐ mailing; ☒ e-mailing; ☒ CM/ECF electronic service at the party's email address as recorded on the date of service in the court's eFiling system.

DATED this 7th day of November, 2025.

<u>s/ Alexandra M. Shulman</u>
Alexandra M. Shulman, WSBA No. 48888

CERTIFICATE OF SERVICE – 1